Mark **PARADIS**

v.

**WEBBER HOSPITAL and Roger J. P. Robert, M.D. and Donald G. Belliveau, M.D.**

Supreme Judicial Court of Maine.

Dec. 31, 1979.

---

Daniel G. Lilley, E. Paul Eggert (orally), Portland, for plaintiff.

Preti, Flaherty & Belliveau, John Paul Erler, Portland, for Webber Hospital.

Berman, Berman & Simmons, Jack H. Simmons (orally), Lewiston, for Robert, M.D.

Hunt, Thompson & Bowie, by James M. Bowie (orally), M. Roberts Hunt, Portland, for Belliveau, M.D.

Before POMEROY, WERNICK, ARCHIBALD, GODFREY and NICHOLS, JJ.

ARCHIBALD, Justice.

This civil action, filed October 27, 1978, sought damages against Webber Hospital and two physicians, Roger J. P. Robert, M.D., and Donald G. Belliveau, M.D. The plaintiff alleged that the two doctors, on and after August 8, 1976, treated his injuries resulting from a "vehicular accident" in a "careless, negligent and unskillful manner" causing "the loss of his left foot and ankle, restricted motion of his left knee, delayed healing of the left femur, and great pain and suffering."

Arguing that the plaintiff had failed to comply with 24 M.R.S.A. § 2903, the doctors filed motions to dismiss (which were ultimately treated as motions for summary judgment), appending thereto their respective affidavits, each incorporating a letter dated July 13, 1978, from Mr. Paradis' attorney specifying precise acts of alleged negligence and confining the dates of treatment to eleven days terminating on August 19, 1976.

The plaintiff's attorney also enclosed in his letter a signed but undated "draft of the Complaint that will be filed against you in the event this action is filed in Court."

A justice of the Superior Court denied these motions, holding that the attorney's letters incorporating a copy of the complaint which was subsequently filed in the Superior Court satisfied the provision of 24 M.R.S.A. § 2903 (P.L.1977, ch. 492, § 3, effective October 24, 1977), which provided:

No action for death or injuries to the person arising from any medical, surgical or dental treatment, omission or operation shall be commenced until at least 90 days after written notice of claim *setting forth under oath* the nature and circumstances of the injuries and damages alleged is served personally or by registered or certified mail upon the person or persons accused of wrongdoing. Any applicable statute of limitations shall be *tolled for a period of 90 days* from service of notice. (emphasis supplied).

On appropriate motions by the defendant doctors, the justice then reported the interlocutory order denying the motions to the Law Court and stayed further proceedings pending decision of the reported issue. M.R.Civ.P. 72(c).

Since we conclude that the ruling reported was erroneous, we vacate the same and remand the case to the Superior Court for further proceedings consistent with this opinion.

Treating the two doctors as appellants (M.R.Civ.P. 72(d)), we turn to the two issues which they raise.

1. Does the attorney's letter incorporating the signed but unfiled draft complaint comply with the "under oath" requirement of Section 2903?

2. Does Section 2903 apply to medical malpractice actions which accrued prior to October 24, 1977, the effective date of the Act?

## I

In upholding the plaintiff's position that the attorney's signature (on the draft copy of the complaint) should be viewed as satisfying the "oath" requirement of Section 2903, the single justice wrote:

Unlike the statutes involved in *Pineland Lumber Co. v. Robinson*, Me., 382 A.2d 33, 37 (1978) (lien statute) and *Holbrook v. State*, 161 Me. 102, 208 A.2d 313 (1965) (habeas corpus proceedings), the oath provision of § 2903 does not compel a strict literal compliance.

.    .    .    .    .

This letter from Plaintiff's attorney together with a copy of a draft complaint signed by counsel pursuant to Rule 11, M.R.Civ.P., which was subsequently filed in the case, is, in the court's view, a sufficient compliance with the notice requirements of the statute.

Should we adopt the rationale of the single justice or should we give literal meaning to the "under oath" provision of Section 2903? The plaintiff argues that a strict construction would defeat the purpose of the legislation.

The Maine Health Security Act, 24 M.R.S.A. §§ 2501–2905, became effective October 24, 1977, and was enacted to implement the recommendation of a commission study, namely, the Pomeroy Commission. That study addressed the recommended waiting period preliminary to filing a malpractice action and stated:

Notice of claim. The Commission believes that any reasonable measure that helps weed out doubtful claims and encourages the settlement of meritorious ones is beneficial to the parties and public. In malpractice claims this may be the result if there is a mandatory waiting period prior to suit in which negotiations may take place. It is therefore recommended that a potential plaintiff be required to give at least 90 days notice, in writing, of his intention to file a malpractice action (2903).

The parties concede that the legislative record is of no assistance in explaining why the original draft of Section 2903 was amended to include the "under oath" language and enacted accordingly. Our examination of the record is equally unproductive.

The plaintiff urges us to find that the statutory purpose was merely to give *notice* of a pending claim and not to require an affirmation to the truth of the facts asserted as is traditional when an oath is required. *See, e. g., Seiden v. Allen*, 135 N.J.Super. 253, 343 A.2d 125 (1975) (The purpose of an oath is to affirm the truth of facts on the basis of personal knowledge.)

So construed, he continues, the statutory purpose must be held to impose a less strict requirement than that of a formal oath. He concludes that we should adopt the standard imposed on an attorney (as the single justice had done at least by analogy), when signing a pleading, namely, that such signing "constitutes a certificate by [the attorney] . . . that to the best of his knowledge, information, and belief there is good ground to support it." M.R.Civ.P. 11.

We decline to so construe Section 2903.

■ The fundamental rule in statutory construction is that words must be given their plain meaning. *New England Tel. & Tel. Co. v. P.U.C.*, Me., 376 A.2d 448, 453 (1977). Of course, legislative intent is always of fundamental importance. *Id.* at 453. Thus, the court has disregarded the strict wording of statutes to avoid absurd results, *e. g., Cornwall Industries, Inc. v. Maine Department of Manpower Affairs*, Me., 351 A.2d 546, 552–53 (1976), or to achieve inconsistent or unreasonable results. *Woodcock v. Atlass*, Me., 393 A.2d 167, 170 (1978).

In the instant case, however, the "under oath" requirement of Section 2903 is not irrational nor does it produce an absurd, inconsistent or unreasonable result. The term is the essential equivalent of "sworn to," a provision which we have had occasion to construe. *E. g., Pineland Lumber Co. v. Robinson*, Me., 382 A.2d 33 (1978) (materialmen's lien); *Holbrook v. State*, 161 Me. 102, 208 A.2d 313 (1965) (habeas corpus petition). Similarly, with respect to a contempt petition, we held that, in order to meet the "in writing and under oath" requirement, the petition must be signed and verified, failure to do so being a jurisdictional defect. *Cushman Co. v. Mackesy*, 135 Me. 490, 200 A. 505 (1938).

■ The oath provision in a statute is more than a mere technicality. Its function is both to make clear the significance of filing the document itself and to provide a basis for a perjury action upon proof of falsification. *Pineland Lumber Co.*, 382 A.2d at 37. A purpose parallel to that

envisioned by Section 2903 was achieved in the requirement that materialmen's liens be filed under oath; *i. e.*, "to protect the [defendant] at the initial stage of the . . . proceedings against frivolous, untrue, inflated or mistaken claims." 382 A.2d at 38. Thus, the provision in Section 2903 simply means that the declarant must verify in writing and in the form of an oath taken before an authorized official, the truth of the allegations.

■ M.R.Civ.P. 11 does not, nor is it meant to, achieve these same goals. Rather, its purpose is "[t]o impress [attorneys] with the seriousness of their obligations under the rules [of Civil Procedure]." Field, McKusick and Wroth, Maine Civil Practice, § 11.3 at 232 (1970). That this rule should not apply to Section 2903 is strikingly evident when one considers that an attorney filing a pleading under Rule 11 is under no affirmative duty to ascertain the truthfulness of his client's claim. Rather, he need only believe that there is good ground to support the pleading which he has signed. *Application of Feingold*, Me., 296 A.2d 492, 501 (1972). The court must presume that the Legislature was aware of the significance of requiring attorneys to sign pleadings under Rule 11 when it enacted Section 2903. The Legislature declined to adopt the more relaxed standard urged on us by the plaintiff. If we were to adopt this standard we would, in effect, be acting legislatively, a power we do not possess.

II

In view of our interpretation of Section 2903 in which we conclude that the plaintiff has not complied with the "under oath" requirement thereof, we need not discuss the defendants' second argument that the section does not apply to actions accruing prior to its effective date.

■ The two doctors last treated the plaintiff on August 19, 1976, which is the date of the commission of the alleged negligent act. "Actions for . . . malpractice of physicians . . . shall be commenced within 2 years after the cause of action accrues." 14 M.R.S.A. § 753; *Mil-*

*lett v. Dumais*, Me., 365 A.2d 1038, 1041 n.4 (1976), and cases therein cited. The action was commenced October 27, 1978, when the complaint was filed in the York County Superior Court. M.R.Civ.P. 3. The 90-day tolling period of Section 2903 is not operative because the plaintiff failed to file the written notice under oath. There was error in not ordering judgment for the two doctors because the statute of limitations precluded the maintenance of the plaintiff's cause of action.

The entry is:

Appeals sustained.

Ruling reported is vacated.

Remanded for further proceedings consistent with the opinion herein.

McKUSICK, C. J., and GLASSMAN, J., did not sit.