**August BROWN, p.p.a. Helen Brown, Helen Brown and Russell Brown, Individually, Plaintiffs,**

v.

**Robert TIMOTHY, Portland Urologic Associates, P.A., Charles Grimes, and Radiology Associates, P.A., a/k/a Radiology Associates, Defendants.**

Civ. No. 86–0407–P.

United States District Court, D. Maine.

Oct. 26, 1987.

John P. Barylick, Providence, R.I., Thomas J. Connolly, Portland, Me., for plaintiffs.

Jack H. Simmons, Lewiston, Me., Paul F. Driscoll, Portland, Me., for defendants.

### MEMORANDUM OF DECISION AND ORDER DENYING DEFENDANTS' MOTIONS FOR SUMMARY JUDGMENT

GENE CARTER, District Judge.

Plaintiff August Brown is a four-year-old boy currently living with his parents in Jacksonville, Florida. Plaintiffs allege that Defendants were negligent in treating August for a urological condition in 1985. As a result, Plaintiffs assert that August has suffered serious injuries requiring additional surgery, while August's parents have incurred medical expenses and suffered serious mental distress. Defendants bring these motions for summary judgment, ar-

guing that Plaintiffs failed to comply with the prelitigation notice provisions contained in 24 M.R.S.A. § 2903, which provides:

> No action for death or injuries to the person arising from any medical, surgical or dental treatment, omission or operation shall be commenced until at least 90 days after written notice of claim setting forth under oath the nature and circumstances of the injuries and damages alleged is served personally or by registered or certified mail upon the person or persons accused of wrongdoing. Any applicable statute of limitations shall be tolled for a period of 90 days from service of notice.[1]

According to the parties' stipulation, Plaintiffs' counsel sent notices of claim to each of the Defendants by certified mail on January 30, 1986.[2] The claim notice addressed to Defendant Timothy was signed for by one of his employees, a nurse named Jean Dunphy. The parties stipulate that Ms. Dunphy's duties would not ordinarily include signing for or receiving certified mail, and she was not specifically authorized to receive or sign for mail. However, Defendant Timothy, like all the other Defendants, concedes that he did in fact receive the claim. Defendants Timothy's and Portland Urologic Associates' Memorandum of Law in Support of Motion for Summary Judgment at 4. On February 5, 1986, a senior claims representative from Medical Mutual Insurance Company of Maine (Medical Mutual), Dr. Grimes' professional liability insurer, requested details of the claim from Plaintiffs' attorney. Two weeks later, Plaintiffs' counsel sent a nine-page letter which traced August's medical history, described in detail the basis for the claim, the damages alleged, and the expert opinions upon which counsel relied. Attached to the letter was a volume of several hundred pages containing August's medical records, billing records, and information concerning the qualifications and opinions of Plaintiffs' expert. Plaintiffs also included material relating to Helen Brown's medical expenses for psychological injury. Plaintiffs and Medical Mutual corresponded several times over the next several months, until September 23, when Medical Mutual wrote Plaintiffs' attorney that "[a]s a result of [Medical Mutual's] investigation, we do not believe that a voluntary settlement is in order." On December 31, 1986, well within the statute of limitations,[3] Plaintiffs commenced this diversity action.

Defendants' memoranda in support of their motions assert that Plaintiffs failed to satisfy the requirements of 24 M.R.S.A. § 2903 for the following reasons: first, the claim notices failed to set forth the nature and circumstances of the injuries and damages allegedly resulting from Defendants' malpractice. Second, Defendants claim that the notices were not served "upon the person or persons accused of wrongdoing." Finally, Defendants assert that the notices

---

**1.** Section 2903 was amended by P.L.1985, c. 804, section 14. The amendment, which provides for prelitigation screening and mediation panels, became effective January 1, 1987. Plaintiffs are not subject to the amendment's provisions, however, because they served the notice of claim and commenced the action in 1986, before the amendment took effect.

**2.** The notice of claim to Defendants Timothy and Grimes, exclusive of salutation and closing, reads as follows:

> I represent August Brown, a minor, and his parents, Helen and Russell Brown, who hereby give notice of causes of action against you for medical negligence arising from your treatment of August Brown from April 1, 1985, and thereafter.
>
> Please refer this letter to your malpractice insurer. If I have not heard from your representative within ten (10) days of receipt of

this letter, the case will be placed in suit without further notice.

The notices to Defendants Portland Urologic Associates and Radiology Associates were as follows:

> I represent August Brown, a minor, and his parents, Helen and Russell Brown, who hereby give notice of causes of action against the above corporation for medical negligence. This action arises from its agent's treatment of August Brown on or about May 31, 1985.
>
> Please refer this letter to the corporation's malpractice insurer. If I have not heard from your representative within ten (10) days of receipt of this letter, the case will be placed in suit without further notice.

**3.** Pursuant to 14 M.R.S.A. § 753 (1980), actions for medical malpractice must be commenced within two years after the cause of action accrues.

were defective because they were not signed under oath by the claimants. Defendants conclude these alleged defects entitle them to a judgment as a matter of law.[4] The Court will address each issue in turn.

■ Defendants first argue that the notices of claim were deficient because they did not indicate "the details of the claim, the basis for the claim, or what damages are alleged," Defendants Timothy's and Portland Urologic Associates' Memorandum in Support of Motion for Summary Judgment at 3, or "the circumstances giving rise to the claim of medical malpractice." Defendants Grimes' and Radiology Associates' Memorandum in Support of Motion for Summary Judgment at 3.

However, Defendants misconstrue the meaning and purpose of section 2903. A notice of claim is not a prelitigation discovery device, and detailed allegations as to the nature and circumstances of the injuries and damages need not be included in the notice of claim. *Jagoe v. Blocksom*, 440 A.2d 1022, 1025 (Me.1982). Instead, the notice provision is designed to alert the defendants to the claim, and "provides a period of time during which the parties can attempt to settle the claim through non-judicial procedures before they encounter the expense, time limits, and other pressures associated with discovery and preparation for trial." *Dougherty v. Oliviero*, 427 A.2d 487, 490 (Me.1981) (Carter, J.). The details concerning the basis for the claim or circumstances surrounding the claim should be disclosed during the 90–day negotiation period, and are not required in the notice of claim. *Jagoe*, 440 A.2d at 1025.

In the present case, the notice was sufficient to notify Defendants of the nature of the claim, and the voluminous package which Plaintiffs sent to Defendants' insurance carrier three weeks after mailing the notice provided Defendants with extensive information concerning the pertinent details. Plaintiffs also responded quickly to the insurer's subsequent request for more

information. Moreover, Plaintiffs provided almost eight months of time to achieve a settlement (while the statute requires only ninety days), thus allowing Defendants' insurer to conduct a complete investigation into the claim. Thus, Plaintiffs met the requirements of 24 M.R.S.A. § 2903 regarding the contents of the notice and the conduct of the parties during the 90–day negotiation period.

■ Defendants' next argument, that the notice of claim was defective because it was not served directly upon "the person or persons accused of wrongdoing," is meritless. Plaintiffs sent the claim notice to each Defendant by certified mail, as provided for by the statute, and Defendants concede that they actually received the notices. Nevertheless, Defendants insist that the statute requires more. Defendants claim that service by certified mail must be made directly upon the person in question or upon a person authorized to receive service. Defendants Timothy's and Portland Urologic Associates' Memorandum in Support of Motion for Summary Judgment at 4. However, Defendants fail to cite a single case in support of such a proposition, nor does it follow logically from the statute. The statute provides that a notice of claim may be served by certified mail. Plaintiffs sent the notices to Defendants by certified mail and the postal service delivered them to Defendants' offices, where they were received by Defendants' employees and agents and given to Defendants. The statute requires no more.

■ Finally, Defendants correctly point out that the statute requires that the notice of claim be made "under oath." 24 M.R.S.A. § 2903. The purpose of the oath provision "is both to make clear the significance of filing the document itself and to provide a basis for a perjury action upon proof of falsification." *Paradis v. Webber Hospital*, 409 A.2d 672, 675 (Me.1979) (citing *Pineland Lumber Co. v. Robinson*, 382 A.2d 33, 37 (Me.1978)). In the present case, the original claim notice was not made un-

---

**4.** The parties do not dispute that the prelitigation notice requirement contained in 24 M.R.S.A. § 2903 applies to the plaintiff in a diversity action. *Houk v. Furman*, 613 F.Supp. 1022, 1027 (D.Me.1985).

der oath, but Helen and Russell Brown, individually and as parents and next friend of August, subsequently swore to a "Notice of Claim under Oath" which was served on each Defendant personally in June 1987. Thus, while the original notice of claim failed to comply with section 2903 because it was not signed under oath, Plaintiffs have delivered a notice of claim which complies with the "under oath" provision. Defendants urge that the defect in the original notice entitles them to a judgment. However, the Maine Supreme Judicial Court has made clear that a defect in the notice such as the one in the present case is an insufficient ground for dismissal.

Section 2903 "does not specify the consequences of failing to comply with the notice requirement." *Dougherty,* 427 A.2d at 489. Thus, there are a variety of sanctions with which a trial court may "enforce the equitable substance of section 2903's notice requirement." *Michaud v. Northern Maine Medical Center,* 436 A.2d 398, 402 (Me.1981). The appropriate sanction must be determined by the circumstances of the case. *Id.; Levasseur v. Aaron,* 503 A.2d 1291, 1293 (Me.1986). In circumstances such as those presented in the present case, where the action was commenced before the expiration of the statute of limitations, the Supreme Judicial Court has held that section 2903 does not require a court to dismiss the claim. *Dougherty,* 427 A.2d at 490.

Section 2903 mandates "that some notice of claim, be it sufficient or deficient, be served ... within the period of limitations." *Givertz v. Maine Medical Center,* 459 A.2d 548, 553 (Me.1983). Beyond that, however, the statutory provisions of section 2903 are directory and not mandatory:

> So far as the other statutory requirements respecting the details of the notice of claim, its verification and service, which are not of the very essence of giving notice of intended legal action and which, if not in strict compliance with the statute, would not prejudice the rights of interested parties, they are to be regarded as directory, notwithstanding the fact that the statutes are couched solely in terms of the mandatory 'shall.'

*Id.* at 554. There is absolutely no evidence in the present case that Defendants have suffered any prejudice from the fact that the original notice was not made "under oath." By serving the second notice under oath, Plaintiffs ensured that both of the purposes underlying the oath provision were met: the oath process has made the significance of filing the document clear to Plaintiffs, and Defendants are currently in possession of a notice sworn to under oath by Plaintiffs which would provide a basis for a perjury action, if such an action is warranted.

The Maine Supreme Judicial Court has held that a trial court should not dismiss an action because the notice of claim was not "under oath." *Michaud,* 436 A.2d at 402. In *Michaud,* plaintiffs' counsel sent a claim notice to the defendant-hospital's executive director and later filed the complaint within the two-year statute of limitation. *Id.* at 399. The notice was not signed "under oath," and therefore did not comply with section 2903. *Id.* Upon defendant's motion, the Superior Court dismissed the action because of the defect in the notice. *Id.* Plaintiffs subsequently served the hospital with a properly sworn notice. *Id.* The Supreme Judicial Court undertook "a fair balancing of the equities" and found that dismissal was too harsh a sanction for noncompliance under such circumstances. *Id.* at 402. The defendants had not been prejudiced by the original notice's defect because the formally correct notice furnished plaintiffs with "the same basis for a perjury action as the original notice would have done had it been under oath." *Id.* Thus, the Court vacated the lower court's judgment.

The similarities between *Michaud* and the case at bar are striking. *Id.* As in *Michaud,* Plaintiffs in the present case served a notice of claim upon Defendants more than ninety days before filing their action and the action was filed within the limitation period. In both cases, Plaintiffs perfected the notice after filing the action. Just as the Maine Court held that dismissal in *Michaud* was unjustified, so this Court finds that Defendants' motion must fail.

In conclusion, Plaintiffs provided Defendants with more time to assess their exposure and effectuate a settlement than required by section 2903. Plaintiffs cooperated fully with Defendants during the negotiation period, and waited until Defendants had completed their investigation before they brought suit. Plaintiffs fulfilled the mandatory requirements of section 2903, and Defendants have not been prejudiced by Plaintiffs' failure to comply with a directory provision of the statute. Accordingly, the Defendants' motions for summary judgment are hereby DENIED.

So ORDERED.